DONALD L. BENBOW AND PATRICIA J. BENBOW, DANIEL W. CASS, JR., AND BARBARA CASS, EARL R. LUECKEL AND LOIS B. LUECKEL, FREDERIC E. SAUNDERS AND MARY ALICE SAUNDERS, AND WILLIAM H. STRONG AND ELLA K. STRONG, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 23410–82.     Filed June 7, 1984.

---

*Paul R. Stibich*, for the petitioners.
*Kathleen L. Midian*, for the respondent.

OPINION

CHABOT, *Judge*: Respondent determined deficiencies in Federal individual income tax, and in Federal excise tax under section 4973,[1] against petitioners as follows:

|  | Year | Deficiency | |
|  |  | Income tax | Excise tax[2] |
|---|---|---|---|
| Donald L. Benbow and Patricia J. Benbow | 1978 | $542.50 | $130.20 |
| Daniel W. Cass, Jr., and Barbara L. Cass | 1978 | $811.00 | 294.00 |
| Daniel W. Cass, Jr. | 1979 |  | 294.00 |
| Earl R. Lueckel and Lois B. Lueckel | 1978 | 6,722.11 | 913.87 |
|  | 1979 |  | 913.87 |
| Frederic E. Saunders and Mary Alice Saunders | 1978 | 1,897.00 | 304.50 |
| William H. Strong and Ella K. Strong | 1978 | 4,558.31 | 653.10 |
|  | 1979 |  | 653.10 |
|  | 1980 |  | 653.10 |

---

[1] Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the years in issue.

[2] The notices of deficiency may be understood as asserting joint liabilities for the excise tax deficiencies. Respondent concedes that the petitioner-wives are not liable for these deficiencies. See *Guest v. Commissioner,* 72 T.C. 768, 779–780 (1979).

The issues for decision[3] are as follows:

(1) Whether any portion of the terminating distributions from a pension plan received by petitioner-husbands in 1978 may be "rolled over" tax free to individual retirement accounts under section 402(a)(5), the plan having lost its tax-qualified status for periods after December 31, 1975.

(2) Whether petitioner-husbands are liable for excise taxes under section 4973 on excess contributions to individual retirement accounts and, if so, in what amounts.

The instant case has been submitted fully stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petition in the instant case was filed, petitioners Donald L. Benbow (hereinafter sometimes referred to as Benbow) and Patricia J. Benbow, husband and wife, resided in North Ridgeville, Ohio; petitioners Daniel W. Cass, Jr. (hereinafter sometimes referred to as Cass), and Barbara Cass, husband and wife, resided in Wolcottville, Ind.; petitioners Earl R. Lueckel (hereinafter sometimes referred to as Lueckel) and Lois B. Lueckel, husband and wife, resided in Westlake, Ohio; petitioners Frederic E. Saunders (hereinafter sometimes referred to as Saunders) and Mary Alice Saunders, husband and wife, resided in Angola, Ind., and petitioners William H. Strong (hereinafter sometimes referred to as Strong) and Ella K. Strong, husband and wife, resided in Fairview Park, Ohio.

Electric Cord Sets, Inc. (hereinafter sometimes referred to as Electric), an Ohio corporation, instituted a pension plan (hereinafter sometimes referred to as the plan) for its employees in 1958. In 1959, the plan became tax qualified under section 401(a) and the plan's trust (hereinafter sometimes referred to as the trust) became exempt under section 501(a). In 1963, the plan was amended and the Internal Revenue Service recognized the plan's tax-qualified status under section 401(a) and the trust's exempt status under section 501(a).

On July 18, 1978, Electric terminated the plan effective for the plan year ended December 31, 1977, and filed a final tax return Form 5500–C for the plan year ended December 31, 1977. In 1978, the trustees of the trust distributed the assets of the trust to the participants in the plan.

---

[3]The medical expense adjustment in the notice of deficiency as to Daniel W. Cass, Jr., and Barbara Cass is derivative and depends on our resolution of the issue in dispute.

Each petitioner-husband was an employee of Electric and a participant in the plan. Each petitioner-husband received a terminating distribution from the trust in 1978 and invested his distribution in an individual retirement account (hereinafter sometimes referred to as an IRA), described in section 408(a).

Throughout the duration of the plan and the trust, none of the petitioners was a trustee of the trust or a shareholder or member of the board of directors of Electric. Throughout the duration of the plan and the trust, none of the petitioners held any decision-making positions with reference to the plan and the trust.

Benbow became president of Electric in April of 1977 and held that position during 1978.

In 1979, the plan and the trust were examined by respondent. Based on this examination, it was determined that the plan discriminated among salaried employees. In September of 1979, a preliminary letter proposing revocation of the plan's tax-qualified status under section 401(a), and the trust's exempt status under section 501(a), was issued by respondent. On February 15, 1980, respondent revoked the plan's tax-qualified status and the trust's exempt status retroactively, effective as of January 1, 1976.

On January 1, 1976, and thereafter, the plan was not a tax-qualified plan under section 401(a), and the trust was not exempt under section 501(a). In particular, when the terminating distributions from the trust were made to petitioner-husbands in 1978, the plan was not a tax-qualified plan and the trust was not exempt.

The amounts of the total distributions, and the amounts attributable to contributions made for periods after December 31, 1975, are shown in table 1.[4]

TABLE 1

| Participant | Total distribution | Post-1975 portion |
|---|---|---|
| Benbow | $2,170.00 | $2,170.00 |
| Cass | 4,900.00 | 3,488.88 |
| Lueckel | 15,231.13 | 1,938.46 |
| Saunders | 5,075.00 | 1,529.86 |
| Strong | 10,885.00 | 4,036.36 |

[4]Neither side suggests that any part of the amounts involved are attributable to employee contributions. See sec. 402(a)(5)(B).

Each petitioner-husband made the maximum allowable contribution to his IRA, for each of the years before the Court for which a deficiency of section 4973 tax has been determined, in addition to the rollover of his 1978 distribution from the trust.

## I. Income Tax

Under section 402(a)(5),[5] if a participant in a tax-qualified plan receives a lump-sum distribution from the plan's exempt

---

[5] SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.
(a) TAXABILITY OF BENEFICIARY OF EXEMPT TRUST.—

* * * * * * *

(5) ROLLOVER AMOUNTS.—
(A) GENERAL RULE.—If—
(i) the balance to the credit of an employee in a qualified trust is paid to him in a qualifying rollover distribution,
(ii) the employee transfers any portion of the property he receives in such distribution to an eligible retirement plan, and
(iii) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed,
then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.
(B) MAXIMUM AMOUNT WHICH MAY BE ROLLED OVER.—In the case of any qualifying rollover distribution, the maximum amount transferred to which subparagraph (A) applies shall not exceed the fair market value of all the property the employee receives in the distribution, reduced by the employee contributions.
(C) TRANSFER MUST BE MADE WITHIN 60 DAYS OF RECEIPT.—Subparagraph (A) shall not apply to any transfer of a distribution made after the 60th day following the day on which the employee received the property distributed.
(D) DEFINITIONS.—For purposes of this paragraph—
(i) QUALIFYING ROLLOVER DISTRIBUTION.—The term "qualifying rollover distribution" means 1 or more distributions—
(I) within 1 taxable year of the employee on account of a termination of the plan of which the trust is a part or, in the case of a profit-sharing or stock bonus plan, a complete discontinuance of contributions under such plan, or
(II) which constitute a lump sum distribution within the meaning of subsection (e)(4)(A) (determined without reference to subparagraphs (B) and (H) of subsection (e)(4)).
(ii) EMPLOYEE CONTRIBUTIONS.—The term "employee contributions" means
(I) the excess of the amounts considered contributed by the employee (determined by applying section 72(f)), over
(II) any amounts theretofore distributed to the employee which were not includible in gross income.
(iii) QUALIFIED TRUST.—The term "qualified trust" means an employees' trust described in section 401(a) which is exempt from tax under section 501(a).
(iv) ELIGIBLE RETIREMENT PLAN.—The term "eligible retirement plan" means—
(I) an individual retirement account described in section 408(a),
(II) an individual retirement annuity described in section 408(b) (other than an endowment contract),
(III) a retirement bond described in section 409,
(IV) a qualified trust, and
(V) an annuity plan described in section 403(a).
(E) SPECIAL RULES.—
(i) TRANSFER TREATED AS ROLLOVER CONTRIBUTION UNDER SECTION 408.—For purposes of this title, a transfer described in subparagraph (A) to an eligible retirement plan described in subclause (I), (II), or (III) of subparagraph (D)(iv) shall be treated as a rollover contribution

trust and rolls it over into an IRA, then the participant is not to include in gross income the amount so rolled over.

Section 402(b)[6] provides that distributions from a nonexempt trust are to be taxed under section 72, which generally provides for current taxation of distributions as ordinary income.

Respondent contends that, since the plan was not tax qualified and the trust was not exempt when the distributions here involved were made, the distributions are includable in their entirety in petitioner-husbands' gross incomes under section 402(b) and are taxable as ordinary income. Respondent concedes that each of the rollovers would meet the requirements of current excludability under section 402(a)(5) if the trust were a "qualified trust," within the meaning of section 402(a)(5)(A)(i).

Petitioners maintain that they are taxable currently on only those portions of the distributions that result from contributions made after the loss of tax-qualified and exempt status. The other portions of the distributions, they assert, are excludable from income under section 402(a)(5), because they were rolled over into IRAs.

We agree with petitioners.

---

described in section 408(d)(3).

(ii) SELF-EMPLOYED INDIVIDUALS AND OWNER-EMPLOYEES.—An eligible retirement plan described in subclause (IV) or (V) of subparagraph (D)(iv) shall not be treated as an eligible retirement plan for the transfer of a distribution if any part of the distribution is attributable to a trust forming part of a plan under which the employee was an employee within the meaning of section 401(c)(1) at the time contributions were made on his behalf under the plan.

[The subsequent amendments of this provision by sec. 311(b)(3)(A) of the Economic Recovery Tax Act of 1981 (Pub. L. 97–34, 95 Stat. 172, 280), and sec. 103(c)(8)(A) of the Technical Corrections Act of 1982 (Pub. L. 97–448, 96 Stat. 2365, 2376), do not affect the instant case.]

[6]SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST.

(b) TAXABILITY OF BENEFICIARY OF NONEXEMPT TRUST.—Contributions to an employees' trust made by an employer during a taxable year of the employer which ends within or with a taxable year of the trust for which the trust is not exempt from tax under section 501(a) shall be included in the gross income of the employee in accordance with section 83 (relating to property transferred in connection with performance of services), except that the value of the employee's interest in the trust shall be substituted for the fair market value of the property for purposes of applying such section. The amount actually distributed or made available to any distributee by any such trust shall be taxable to him in the year in which so distributed or made available, under section 72 (relating to annuities), except that distributions of income of such trust before the annuity starting date (as defined in section 72(c)(4)) shall be included in the gross income of the employee without regard to section 72(e)(1) (relating to amount not received as annuities). A beneficiary of any such trust shall not be considered the owner of any portion of such trust under subpart E of part I of subchapter J (relating to grantors and others treated as substantial owners).

The proper tax treatment of distributions from formerly exempt employees' trusts has been examined in opinions of the Courts of Appeals for the Second and Fifth Circuits and opinions of the judges of this Court in *Greenwald v. Commissioner*, 366 F.2d 538 (2d Cir. 1966), revg. in part 44 T.C. 137 (1965); *Woodson v. Commissioner*, 651 F.2d 1094 (5th Cir. 1981), revg. 73 T.C. 779 (1980); and *Baetens v. Commissioner*, 82 T.C. 152 (1984).

The position of this Court is that, to the extent a distribution is attributable to the exempt life of the trust, that portion of the distribution is to be treated as one to which sections 402(a) and 402(e) apply, with the remainder being treated as a distribution to which section 402(b) applies. *Baetens v. Commissioner, supra.*

*Baetens, Woodson*, and *Greenwald* involved profit-sharing plans, while in the instant case, the parties have stipulated that the plan is a "pension" plan. The parties have not enlightened us as to whether this plan is a defined benefit plan or a defined contribution plan (e.g., a money-purchase pension plan). See secs. 414(i) and 414(j). We do not have precedent as to how to compute the amount of the "qualified assets" (*Baetens v. Commissioner*, 82 T.C. at 170) of a defined benefit plan. However, we take the parties' stipulations as to the amounts "attributable to contributions made after December 31, 1975", as their agreement that the amounts so described are to be treated as the nonqualified assets (to be dealt with under sec. 402(b)) and the remaining amounts of the distributions are to be treated as the qualified assets (to be dealt with under sec. 402(a)). The computations under Rule 155, Tax Court Rules of Practice and Procedure, are to be made in accordance with this allocation. See table 1 *supra.*

Respondent brings to our attention the opinion of the Court of Appeals for the Seventh Circuit in *Gunnison v. Commissioner*, 461 F.2d 496 (1972), affg. 54 T.C. 1766 (1970). In *Gunnison*, it was held that the taxpayer was not entitled to lump-sum distribution treatment for distributions received by him from an exempt trust which was part of a tax-qualified plan, because the distribution was not made on account of any of the reasons specified in section 402(a)(2) as then in effect. (These qualifying reasons are now set forth in section 402(e)(4)(A), which is referred to in section 402(a)(5)(D)(i)(II). See note 5

*supra.*) In affirming our decision in *Gunnison,* the Court of Appeals stated as follows (461 F.2d at 499):

> The general rule is that distributions from employees' trusts qualified under the Code are taxed as ordinary income when received. An exception is provided in § 402(a)(2) for capital gains treatment in specific cases. * * * The exception was always strictly construed. * * *
>
> Further expansion of the favored treatment specifically provided in § 402(a)(2) as an exercise of legislative grace is a function for the Congress, not for the Courts. See *United States v. Johnson,* 5 Cir., 1964, 331 F.2d 943, 954; *United States v. Martin,* 8 Cir., 1964, 337 F.2d 171, 175.

Our decision in the instant case with regard to the Indiana residents (Cass and Barbara Cass, and Saunders and Mary Alice Saunders) is appealable to the Court of Appeals for the Seventh Circuit (sec. 7482(b)(1)(A)). However, we do not believe that that Court's opinion in *Gunnison* is so clearly dispositive of the issue we face in the instant case as to justify application of the "*Golsen* rule" (*Golsen v. Commissioner,* 54 T.C. 742, 756–758 (1970), affd. 445 F.2d 985 (10th Cir. 1971)). See, e.g., *David Metzger Trust v. Commissioner,* 76 T.C. 42, 72–74 (1981), affd. 693 F.2d 459 (5th Cir. 1982).

We hold for petitioners on this issue.

## II. Excise Tax

Petitioners contend that the petitioner-husbands (see note 2 *supra*) should not be liable for penalty taxes under section 4973, even as to excess contributions, since (1) the entire rollover contributions appeared to them to be proper when the contributions were made, and (2) they "should be afforded a reasonable time to correct the excess contribution[s]." Respondent maintains that willfulness is not a consideration in determining liability for the tax under section 4973; petitioner-husbands made excess contributions and so are liable for the tax.

We agree with respondent, to the extent that there are excess contributions.

In the case of an IRA, section 4973(a)[7] imposes an excise tax

---

[7]Sec. 4973(a) provides, in relevant part, as follows:

SEC. 4973. TAX ON EXCESS CONTRIBUTIONS TO INDIVIDUAL RETIREMENT ACCOUNTS, CERTAIN SECTION 403(b) CONTRACTS, CERTAIN INDIVIDUAL RETIREMENT ANNUITIES, AND CERTAIN RETIREMENT BONDS.

for each taxable year in an amount equal to 6 percent of the excess contributions for the taxable year to the IRA. Section 4973(b)[8] defines "excess contributions", for purposes of the instant case, as the sum of (1) the excess of the amount contributed to the IRA for the taxable year over the amount allowable as a deduction under section 219, and (2) the amount determined to be excess contributions for the preceding taxable year. For purposes of these provisions, rollover contributions described in section 402(a)(5) are not to be taken into account.

We have held (Issue I, *supra*) that the rolled over amounts attributable to the exempt life of the trust are described in section 402(a)(5). These amounts, then, are not taken into

---

(a) TAX IMPOSED.—In the case of—

(1) an individual retirement account (within the meaning of section 408(a)),

\* \* \* \* \* \* \*

established for the benefit of any individual, there is imposed for each taxable year a tax in an amount equal to 6 percent of the amount of the excess contributions to such individual's accounts \* \* \* (determined as of the close of the taxable year). \* \* \* The tax imposed by this subsection shall be paid by the individual to whom a deduction is allowed for the taxable year under section 219 \* \* \*

The subsequent amendment of this provision by sec. 311(h)(9) of the Economic Recovery Tax Act of 1981 (Pub. L. 97–34, 95 Stat. 172, 282) does not affect the instant case.

[8]SEC. 4973. TAX ON EXCESS CONTRIBUTIONS TO INDIVIDUAL RETIREMENT ACCOUNTS, CERTAIN SECTION 403(b) CONTRACTS, CERTAIN INDIVIDUAL RETIREMENT ANNUITIES, AND CERTAIN RETIREMENT BONDS.

(b) EXCESS CONTRIBUTIONS.—For purposes of this section, in the case of individual retirement accounts, individual retirement annuities, or bonds, the term "excess contributions" means the sum of—

(1) the excess (if any) of—

(A) the amount contributed for the taxable year to the accounts or for the annuities or bonds (other than a rollover contribution described in section 402(a)(5), 402(a)(7), 403(a)(4), 403(b)(8), 408(d)(3), or 409(b)(3)(c)), over

(B) the amount allowable as a deduction under section 219 or 220 for such contributions, and

(2) the amount determined under this subsection for the preceding taxable year reduced by the sum of—

(A) the distributions out of the account for the taxable year which were included in the gross income of the payee under section 408(d)(1),

(B) the distributions out of the account for the taxable year to which section 408(d)(5) applies, and

(C) the excess (if any) of the maximum amount allowable as a deduction under section 219 or 220 for the taxable year over the amount contributed (determined without regard to sections 219(c)(5) and 220(c)(6)) to the accounts or for the annuities or bonds for the taxable year. For purposes of this subsection, any contribution which is distributed from the individual retirement account, individual retirement annuity, or bond in a distribution to which section 408(d)(4) applies shall be treated as an amount not contributed.

[The subsequent amendments of this provision by sections 311(h)(7), 311(h)(10), and 313(b)(2) of the Economic Recovery Tax Act of 1981 (Pub. L. 97–34, 95 Stat. 172, 282, 286) do not affect the instant case.]

account for purposes of determining the amounts of excess contributions. The remaining amounts, those attributable to the nonexempt life of the trust (see the right-most column of table 1 *supra*), are not described in section 402(a)(5) and are taken into account for section 4973 purposes. The parties have stipulated, and we have found, that for each year, each petitioner-husband made the maximum allowable contributions to his IRA, in addition to the rollovers that generated the dispute in the instant case.

Applying section 4973(b), each of the petitioner-husbands has, for each of the years in issue as to him, excess contributions in the amount of that portion of his rollover that is attributable to the nonexempt life of the trust. See *Johnson v. Commissioner*, 74 T.C. 1057, 1059–1061 (1980), affd. 661 F.2d 53 (5th Cir. 1981), for a more detailed explanation of how such calculations are to be made, both for the year in which the contribution was made (1978), and for the subsequent years as to which determinations have been made as to Cass (1979), Lueckel (1979), and Strong (1979 and 1980).

We have had occasion to consider the effect of a taxpayer's purpose and intent in making the excess contributions. We concluded that: "Willfulness is not an element in imposition of the excise tax under section 4973." *Johnson v. Commissioner*, 74 T.C. at 1061. See *Orzechowski v. Commissioner*, 69 T.C. 750, 756–757 (1978), affd. 592 F.2d 677 (2d Cir. 1979). In *Orzechowski*, we pointed out that the IRA is not invalidated by the excess contributions. (69 T.C. at 756.) The IRA continues to be exempt from current taxation on its earnings. (Sec. 408(e)(1).)[9] The section 4973 tax is imposed to offset the benefit that would otherwise flow from exempting from current taxation the earnings on contributions that exceed the maximum permitted contributions.

We note that the Congress has made provision for relief from this tax in one situation where the excess contributions may have been inadvertent. Sections 4973(b)(2)(B) and

---

[9]SEC. 408. INDIVIDUAL RETIREMENT ACCOUNTS.

(e) TAX TREATMENT OF ACCOUNTS AND ANNUITIES.—

(1) EXEMPTION FROM TAX.—Any individual retirement account is exempt from taxation under this subtitle unless such account has ceased to be an individual retirement account by reason of paragraph (2) or (3). Notwithstanding the preceding sentence, any such account is subject to the taxes imposed by section 511 (relating to imposition of tax on unrelated business income of charitable, etc. organizations).

408(d)(5)[10] combine to provide that, in general, if a taxpayer relies on erroneous information in making an excess rollover contribution to an IRA, then the IRA may distribute the excess amount without the taxpayer again paying income tax on this amount. Also, when the excess is distributed under these provisions, the amount so distributed reduces the amount of the preceding year's excess contributions taken into account under section 4973(b). Accordingly, the taxpayer can avoid the 6-percent excise tax for the year of the distribution and thereafter. See H. Rept. 95–1739, at 10–11 (to accompany H.R. 13619); H. Rept. 95–1800 (Conf.), at 292 (Revenue Act of 1978), 1978–3 C.B. (Vol. 1) 521, 626; Staff of the Joint Comm. on Taxation, General Explanation of the Revenue Act of 1978, at 103, 106–107.

However, even if a taxpayer qualifies for such relief,[11] nothing in the statute or the legislative history authorizes relief from the section 4973 tax for the years during which the excess contribution remains in the IRA, capable of producing earnings that are not subject to current taxation.

In sum, the Congress has set the ground rules with precision, including those applicable to relief from section 4973. On

---

[10]SEC. 408. INDIVIDUAL RETIREMENT ACCOUNTS.
(d) TAX TREATMENT OF DISTRIBUTIONS.—

* * * * * * *

(5) CERTAIN DISTRIBUTIONS OF EXCESS CONTRIBUTIONS AFTER DUE DATE FOR TAXABLE YEAR.—
(A) IN GENERAL.—In the case of any individual, if the aggregate contributions (other than rollover contributions) paid for any taxable year to an individual retirement account or for an individual retirement annuity do not exceed $1,750, paragraph (1) shall not apply to the distribution of any such contribution to the extent that such contribution exceeds the amount allowable as a deduction under section 219 or 220 for the taxable year for which the contribution was paid—
(i) if such distribution is received after the date described in paragraph (4),
(ii) but only to the extent that no deduction has been allowed under section 219 or 220 with respect to such excess contribution.
If employer contributions on behalf of the individual are paid for the taxable year to a simplified employee pension, the dollar limitation of the preceding sentence shall be increased by the lesser of the amount of such contributions or $7,500.
(B) EXCESS ROLLOVER CONTRIBUTIONS ATTRIBUTABLE TO ERRONEOUS INFORMATION.—If—
(i) the taxpayer reasonably relies on information supplied pursuant to subtitle F for determining the amount of a rollover contribution, but
(ii) such information was erroneous, subparagraph (A) shall be applied by increasing the dollar limit set forth therein by that portion of the excess contribution which was attributable to such information.

[The subsequent amendments of this provision by secs. 311(g)(2), 311(h)(2), and 312(c)(5) of the Economic Recovery Tax Act of 1981 (Pub. L. 97–34, 95 Stat. 172, 281, 282, 284) do not affect the instant case.]
[11]We express no opinion as to whether any of the petitioner-husbands is eligible for such relief.

the record in the instant case, each petitioner-husband is liable for a tax under section 4973 for each of the years in issue as to him, albeit in amounts which (as to four of the petitioner-husbands) are less than those determined in the respective notices of deficiency. On the record in the instant case, none of the petitioner-husbands qualifies for any relief provided by the Congress. We have no authority to rewrite the law to fashion our own relief.

We hold for respondent on this issue, except to the extent that our holding in Issue I, *supra*, results in reducing the amounts treated as excess contributions.

*Decision will be entered under Rule 155.*